IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 6386 |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER

Defendant, Union Pacific Railroad Company ("UP") by its attorneys OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., answers Larry Moore's Complaint, and states as follows:

## JURISDICTION AND VENUE

1.      This is a civil action arising under the laws of the United States and is brought pursuant to which incorporates by reference the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race, to provide appropriate relief to classes of employees who were adversely affected by such practices.

## ANSWER:

Defendant admits this action purports to be one arising under the laws of the United States and brought pursuant the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*, and Title I of the Civil Rights Act of 1991, to correct alleged unlawful employment practices on the basis of race, but denies that there has been a violation of those laws and denies the remaining allegations contained in paragraph 1.

2.      This Court has jurisdiction of the claims pursuant to 28 U.S.C. §§ 1331, 1343.

**ANSWER:**

Defendant admits this Court has jurisdiction over claims brought pursuant to the Civil

Rights Acts of 1964 and 1991, but denies this court has jurisdiction over any class claims and

denies any remaining allegations contained in paragraph 2.

3.      Venue is proper in this district pursuant to 28 U.S.C.A. § 1391(b) and 42
U.S.C.A. § 2000e-5(f)(1) and (3) and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

**ANSWER:**

Defendant admits the allegations contained in paragraph 3.

4.      The employment practices hereafter alleged to be unlawful were being committed
within the jurisdiction of the United States District Court for the Northern District of Illinois,
Eastern Division.

**ANSWER:**

Defendant denies that any unlawful employment practices were committed but admits

that venue is proper in this court.

## PARTIES

5.      Plaintiff, **Larry Moore**, is now, and at all times relevant hereto, a citizen of the
State of Illinois and resident of this District in the County of Cook.

**ANSWER:**

Upon information and belief, Defendant admits the allegations contained in paragraph 5.

6.      Defendant, **Union Pacific Railroad Company (hereinafter "UP")**, is now, and
at all times relevant hereto, a corporation duly organized and existing according to law engaged
in business as a common carrier by rail in interstate commerce.  The **UP's** principal place of
business is located in Omaha, Nebraska.  **UP**, at all relevant times, does business as a common
carrier by rail in counties of this District to include the County of Cook.  The **UP**, also, owns,
operates and controls many miles of track, rail yards and related facilities throughout the County
of Cook, State of Illinois.  **UP** is and was an employer under Section 701(b) of Title VII of the
Civil Rights Act of 1964 (42 U.S.C. § 2000e(b)).  For purposes of the Civil Rights Act of 1991
(42 U.S.C. 1981a), **UP** is an employer who employs in excess of fifteen (15) employees.

**ANSWER:**

Defendant admits the allegations contained in paragraph 6.

7.　　At all times relevant hereto, Plaintiff, **Larry Moore**, was employed by Defendant, **UP**, as Director of Transportation, and plaintiff and defendant were engaged in work in furtherance of interstate commerce.

**ANSWER:**

Defendant admits Plaintiff was employed by Defendant as Director of Transportation from approximately August 16, 2003 until June 30, 2007 and that Defendant is engaged in work in furtherance of interstate commerce. Defendant denies the remaining allegations contained in paragraph 7.

## ADMINISTRATIVE REQUIREMENTS

8.　　On or about February 20, 2007, Plaintiff filed charges of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2007-03204 ("Exhibit A").

**ANSWER:**

On information and belief, Defendant admits that on February 20, 2007, Plaintiff filed the charge attached to the complaint with the EEOC which is designated charge number 440-2007-03204. Defendant denies the allegations in that charge and denies any remaining allegations contained in paragraph 8.

9.　　Plaintiff's Charge of Discrimination was timely filed after the alleged unlawful employment practice occurred. Thus, Plaintiff has satisfied all administrative prerequisites.

**ANSWER:**

On information and belief, Defendant admits Plaintiff filed his charge within 300 days of the effective date of the demotion about which he complains in that charge, but denies any remaining allegations contained in paragraph 9.

10.     Plaintiff received the right to sue letter from the EEOC on or after September 7, 2007.  Said right to sue letter is attached hereto as "Exhibit B".  This case is filed within ninety (90) days of receipt of said right to sue letter.

**ANSWER:**

Defendant is without information and knowledge sufficient to form a belief as to when Plaintiff received the Dismissal and Notice of Rights attached to the complaint as Exhibit B. Defendant admits Plaintiff filed his complaint in this action on November 9, 2007.  Defendant denies any remaining allegations contained in paragraph 10.

## BACKGROUND

11.     Plaintiff began his employment with defendant on or about June 12, 1970 and ascended through the ranks to the position of Director of Transportation.

**ANSWER:**

Defendant admits Plaintiff was hired on June 12, 1970, received promotions and held various positions with Defendant, including the position of Director of Transportation Services which he held from approximately August 16, 2003 until his demotion on approximately June 30, 2006.  Defendant denies the remaining allegations contained in paragraph 11.

12.     As Director of Transportation, Plaintiff had the authority to grant safety awards.

**ANSWER:**

Defendant denies the allegations contained in paragraph 12.

13.     Plaintiff, as Director Transportation, purchased memberships in the Black Employee Network (hereinafter "BEN") as safety awards for fourteen (14) UP employees in March 2005 and for thirty-one (31) UP employees in January 2006, totaling $2,610.00.

**ANSWER:**

Defendant is without information and knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 13 and therefore denies same.

14.    Plaintiff directed the Manager of Administration and Purchasing, a Caucasian female, to make payment for said safety awards.

**ANSWER:**

Defendant admits that Plaintiff sent Kay Bjork, a Caucasian female who held the position of Manager of Administration and Purchasing, an email dated March 23, 2005 stating, "Kay, $490. for safety reduction from 2005 vs. 2004 by 20%. $35. a piece for BEN memberships 2005," and then identified 15 individuals. Defendant further admits that via an email dated January 11, 2006, Plaintiff directed Kay Bjork, that "for safety award Transportation would like to pay for BEN membership" for 31 identified employees. Defendant denies any remaining allegations contained in paragraph 14.

15.    The funds be used for the purchase of the BEN memberships in March 2005 and January 2006 were from the Ogilvie working fund, a UP commuter operations management pooled fund of collections from conductors for unauthorized use of their cell phones. The Ogilvie working fund was not recorded in UP's general ledger.

**ANSWER:**

Defendant admits the Ogilvie working fund was not recorded in UP's general ledger and on information and belief, that it was a fund of collections from conductors for unauthorized use of their cell phones. Defendant further admits that Plaintiff directed that the BEN memberships be paid out of the Ogilvie working fund. Defendant denies any remaining allegations contained in paragraph 15.

16.    Said Manager of Administration and Purchasing initiated the use of the Ogilvie working fund for purchase of the fourteen (14) BEN memberships.

**ANSWER:**

Defendant denies the allegations contained in paragraph 16.

17.    Plaintiff never instructed the said manager from which funds she should withdraw for payment for the safety awards.

**ANSWER:**

Defendant denies the allegations contained in paragraph 17.

18.    Plaintiff did not initiate using the Ogilvie working fund and was never instructed or warned not to use the Ogilvie working fund for purchase of safety awards.

**ANSWER:**

Defendant denies the allegations contained in paragraph 18.

19.    UP senior management requested an audit by the in-house audit division of the funds used for the BEN memberships Plaintiff distributed.

**ANSWER:**

Defendant denies the allegations contained in paragraph 19.

20.    On July 7, 2006, Plaintiff received a Level 2 Letter of Reprimand for misuse of company working funds regarding his purchase of the BEN memberships as safety awards.

**ANSWER:**

Defendant admits the allegations contained in paragraph 20.

21.    This letter of reprimand was Plaintiff's only notice of any problems or irregularities of the purchase of said awards.

**ANSWER:**

Defendant denies the allegations contained in paragraph 21.

22.    Based solely on Plaintiff's receipt of the Level 2 Reprimand, Plaintiff was demoted to Senior Manager of Terminal Operations, effective July 1, 2006, and removed from UP's merit achievement and management incentive program (hereinafter "MIP/MAP program" for 2006-2007.

**ANSWER:**

Defendant admits Plaintiff was demoted effective July 1, 2007 to the position of Senior

Manager of Terminal Operations, his salary was not adjusted, and he was not included in the

MIP/MAP program for 2006, as a result of the audit findings relating to Plaintiff's misuse of

company working funds.  Defendant denies any remaining allegations contained in paragraph 22.

23.    Defendant failed to make any inquiry regarding Plaintiff's alleged misuse of company working funds.

**ANSWER:**

Defendant denies the allegations contained in paragraph 23.

### VIOLATION OF 42 USC §2000E-2 BASED ON RACE

24.    That on July 7, 2006, plaintiff received a letter from defendant demoting plaintiff based on his race effective July 1, 2006.

**ANSWER:**

Defendant denies the allegations contained in paragraph 24.

25.    The plaintiff's race is African American.

**ANSWER:**

Defendant admits the allegations contained in paragraph 25.

26.    Other discrepancies regarding the use of funds were also suggested in the record keeping of Commuter Operations for safety awards that had been disbursed by Caucasian, UP employees, similarly situated to Plaintiff.

**ANSWER:**

Defendant denies the allegations contained in paragraph 26.

27.    Other audits by Defendant's in-house audit division revealed the following:

  a.    the Director of Commuter Operations Mechanical (Caucasian male) approved $18,495.00 of American Express Gift Cheques but no logs of the employees who received these awards were kept;

  b.    the Retired Director of Track Maintenance (Caucasian male) approved $18,670.80 of desk clocks, but no logs of the employees who received these awards were kept;

  c.    the Retired Director of Administration (Caucasian male) approved $34,582.44 of inventory from On Time Promotions which was not accounted for;

  d.    the Director of Commuter Operations Locomotive (Caucasian male) approved $71,164.00 of American Express Gift Cheques, which the purchaser tracking logs had been discarded; $1,611.01 to the Crystal

Woods Golf Club, which attendance records were not kept for the safety meetings; and $8,217.77 in On Time Promotions inventory, which no logs were kept of the employees who received these awards; and

e.    the Director of Commuter Operations Carrier (Caucasian male) approved $110,792.50 of American Express Gift Cheques without utilizing the Purchaser Tracker Log, and $14,653.50 of Sears Gift Cards, which no logs were kept of the employees who received these awards.

**ANSWER:**

Defendant denies the allegations contained in paragraph 27 and its subparagraphs.

28.    Defendant's conduct in summarily demoting plaintiff without any inquiry and not demoting other similarly situated employees, who were Caucasian, was discriminatory and in violation of plaintiff's civil rights.

**ANSWER:**

Defendant denies the allegations contained in paragraph 28.

29.    Upon information and belief, the unlawful discriminatory practices by Defendant, as set forth above, were intentional.

**ANSWER:**

Defendant denies the allegations contained in paragraph 29.

30.    Defendant, at all relevant times, acted with malice or reckless indifference to the federally protected rights of Plaintiff in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*, and the Civil Rights Act of 1991.

**ANSWER:**

Defendant denies the allegations contained in paragraph 30.

31.    That the aforesaid acts by the Defendant have intentionally discriminated against Plaintiff because of his race by:

a.    Assessing a penalty to Plaintiff and not to a similarly situated Caucasian female for allegedly violating the Business Conduct and Ethics Policy for use of funds from the Ogilive[sic] working fund;

b.    Assessing a penalty to Plaintiff and not to similarly situated Caucasian males for facially apparent misuse of funds; and

c.      Assessing a penalty to Plaintiff without making any inquiry regarding the said allegations made against him.

**ANSWER:**

Defendant denies the allegations contained in paragraph 31.

32.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has lost and will continue to lose income, including but not limited to wages, raises, insurance and other employment benefits.  Plaintiff has also suffered emotional distress, as well as disruption of his personal life and damage to his employment reputation.

**ANSWER:**

Defendant denies the allegations contained in paragraph 32.

**AFFIRMATIVE DEFENSES**

1.      By way of affirmative defense, all employment decisions made by Defendant concerning Plaintiff were based upon legitimate, non-discriminatory reasons.

2.      Plaintiff's claims are barred to the extent they exceed the scope of the allegations contained in his EEOC charge.

3.      Even if the trier of fact were to determine that a discriminatory motive or reason played any part in the employment decisions or actions regarding the Plaintiff, which Defendant denies, such decisions or actions would have been taken in any event for legitimate, non-discriminatory, reasons.

4.      Defendant's actions concerning Plaintiff's employment were taken in the good faith belief, based upon reasonable grounds, that they did not violate any provisions of Title VII.

5.      Plaintiff has failed to state a claim against Defendant that would warrant an award of punitive damages.

6.      Plaintiff's compensatory and punitive damages claims are subject to the limitations imposed by 42 U.S.C. § 1981a(b)(3).

7.      Punitive damages may not be awarded because any actions arguably justifying

punitive damages were not authorized or ratified by Defendant and were committed, if at all,

outside the scope of the agency or employment of the actor; further any such conduct warranting

punitive damages, which is denied, was contrary to Defendant's personnel policies, compliance

efforts, and effective solutions to employee EEO concerns.

WHEREFORE, Defendant respectfully requests that the complaint be dismissed and it be

awarded its attorneys fees and costs in this action.

UNION PACIFIC RAILROAD COMPANY


By: /s/ Carol A. Poplawski
                     One of Its Attorneys


Carol A. Poplawski (#6192132)
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
Two First National Plaza
Twenty-Fifth Floor
20 South Clark Street
Chicago, Illinois 60603-1891
(312) 558-1220


Date:  December 3, 2007

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on this 3rd day of December, 2007, she electronically filed the foregoing **ANSWER** with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

John S. Bishof, Jr.
LAW OFFICE OF JOHN BISHOF P.C.
77 West Washington Street, Suite 1910
Chicago, IL 60602

/s/ Carol A. Poplawski

5360960.1

5334781.1